UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOSBEL ABIN-DIAZ (A# 097-778-271),<br>Petitioner,<br>v.<br>WARDEN, CENTRAL VALLEY ANNEX,<br>Respondent. | No. 1:26-cv-07300 DAD SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

## I. Factual and Procedural History

Petitioner is a citizen and national of Cuba who was paroled into the United States near Miami, Florida, on August 8, 2004. ECF No. 10-1 at 4. An immigration judge ("IJ") ordered Petitioner removed on April 9, 2014, pursuant to 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) (noncitizen not in possession of valid entry document) and 1182(a)(2)(A)(i)(I) (convicted of crime involving moral turpitude).[1] ECF 10-4; ECF No. 5-5 at 26 (Notice to Appear). Immigration officials

[1] The record does not identify the specific crime involving moral turpitude. But Petitioner's FBI rap sheet reflects the following convictions predating his removal order: (1) aggravated assault with deadly weapon (Aug. 27, 2008); (2) burglary of unoccupied structure (Aug. 27, 2010); (3) burglary with assault or battery and kidnapping (Aug. 1, 2013). ECF No. 10-7.

released Petitioner on an Order of Supervision ("OSUP") on June 27, 2016. ECF No. 10-6.

On February 23, 2026, local law enforcement arrested Petitioner on an out-of-county warrant for driving with a suspended license. ECF No. 10-7 at 20 (FBI rap sheet). Immigration and Customs Enforcement ("ICE") issued an immigration detainer and revoked Petitioner's OSUP on February 25, 2026, pursuant to 8 C.F.R. § 241.4(*l*) for violating a condition of release ("Convicted of a crime involving moral turpitude, and being an aggravated felon"). ECF No. 11-1 at 5. On or around March 30, 2026, ICE took Petitioner into custody from a county jail and served him with the Notice of Revocation of Release. Id. at 2-3. Petitioner is currently detained in the Central Valley Annex within this judicial district. ECF No. 1 at 1.

Petitioner filed his § 2241 petition on September 10, 2026. ECF No. 1. The petition raises three grounds for relief: (1) Revocation of release without the procedures required by 8 C.F.R. § 241.4(*l*); (2) Re-detention and continued confinement without meaningful notice and opportunity in violation of the Due Process Clause of the Fifth Amendment; and (3) Indefinite post-removal detention in violation of 8 U.S.C. § 1231(a)(6) and Zadvydas v. Davis, 533 U.S. 678 (2001). Id. at 9-12. Petitioner seeks immediate release and an injunction prohibiting his re-detention without compliance with applicable statutory and constitutional procedures. Id. at 13.

Respondent counters that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(6) and has not met his burden of establishing that there is no significant likelihood of removal in the reasonably foreseeable future. ECF No. 10 at 1. Respondent adds that Petitioner's criminal history, which includes convictions for "burglary with assault or battery, kidnapping, aggravated assault with a firearm, improper exhibition of a weapon in violation of probation, and criminal mischief," provides "good cause" for detention beyond six months. Id. at 2-3.

## II. Immigration Detention Framework After Final Order of Removal

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After this 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are

'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [ICE] determines 'to be a risk to the community'; and (4) those [ICE] determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

The Supreme Court examined the constitutional limits of detention under 8 U.S.C. § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692. To avoid serious constitutional problems, Zadvydas read an implicit due process limitation into the immigration statute governing the detention of noncitizens subject to a final order of removal. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six-month period of detention. Id. at 701. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

"Numerous courts have held, however, that the burden-shifting scheme of Zadvydas is only applicable to those noncitizens who had been detained and never released following a final order of removal." Ruiz-Acosta v. Cent. Valley Annex, No. 1:26-CV-04371-DAD-JDP (HC), 2026 WL 1846727, at *2 (E.D. Cal. June 26, 2026) (quoting Martinez v. Bondi, No. 1:25-cv-01633-EFB (HC), 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025)). Where, as here, Petitioner was issued a final order of removal, detained, and subsequently released and then re-detained, "it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); see also Roble v. Bondi, 803 F.Supp.3d 766, 772-73 (D. Minn. Aug. 25, 2025)

("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 811 F.Supp.3d 847, 860 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."); Nguyen v. Hyde, 788 F.Supp.3d 144, 149-150 (D. Mass. June 20, 2025); Vu v. Noem, No. 1:25-cv-01366-KES SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025).

## III. Analysis

### A. Petitioner is Entitled to Relief Pursuant to Zadvydas

Petitioner has an order of removal to Cuba dated April 9, 2014, ECF No. 10-4, that immediately became administratively final due to his waiver of appeal. See 8 C.F.R. § 1003.39 ("[T]he decision of the [IJ] becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first[.]"); 8 C.F.R. § 1241.1(b) (order of removal becomes final "[u]pon waiver of appeal by the respondent"). The IJ's removal order shifted his detention to § 1231(a) and triggered the start of the 90-day removal period, which has long since lapsed. Accordingly, Petitioner's detention is now governed by 8 U.S.C. § 1231(a)(6).

Even discounting Petitioner's period of post-removal detention prior to his release on OSUP in June 2016, his current ICE detention has exceeded six months and is no longer presumptively reasonable. Zadvydas, 533 U.S. at 701. Nevertheless, Respondent maintains that Petitioner has failed to meet his burden of showing there is no significant likelihood of removal in the reasonably foreseeable future. ECF No. 10 at 3. But because ICE released Petitioner on OSUP in June 2016 and revoked that release in February 2026, the undersigned finds that the burden shifting framework of Zadvydas does not apply to this case. See Vu, 2025 WL 3114341, at *5. Instead, it is Respondent who bears the burden of demonstrating that there is a significant likelihood that the Petitioner may be removed to Cuba. See 8 C.F.R. § 241.13(i)(2).

None of Respondent's justifications for Petitioner's current detention approaches this burden. Respondent states that ICE is "actively taking steps to execute the final removal order," ECF No. 10 at 1, but does not specify those steps. Respondent did not file a declaration by a

deportation officer or any other evidence detailing ICE's efforts to remove Petitioner. Nor does Respondent represent that Cuba has agreed to repatriate Petitioner.

Respondent did file Petitioner's "Notice of Removal" dated April 23, 2026, but that document reflects that ICE intends to remove him to Mexico, not Cuba. ECF No. 10-5 at 1. Respondent does not acknowledge ICE's apparent intent to try to remove Petitioner to a third country in any of the three briefs submitted in this case.[2] See ECF Nos. 5, 10, 11. In any event, Petitioner has no order of removal to Mexico. The mere existence of a Notice of Removal to Mexico, absent other information regarding Mexico's willingness to accept Petitioner is insufficient to satisfy Respondent's burden. See Rivero-Tapanes v. Rokosky, No. CV-26-01542-PHX-RM (CDB), 2026 WL 1469826, at *3 (D. Ariz. May 26, 2026) (finding Notice of Removal to Mexico did not show a significant likelihood of removal where "there is no evidence in the record that Mexico has, in fact, agreed to accept Petitioner").[3] Accordingly, Respondent has not shown a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

Respondent's claim that Petitioner's criminal history provides "good cause" for detaining him beyond six months, ECF No. 10 at 2, is unavailing. The Supreme Court in Zadvydas repudiated "preventative" immigration detention, i.e., detention for the purposes of "protecting the community[,]" where removal is not reasonably foreseeable. Zadvydas, 533 U.S. at 690-91; see also Tuan Thai v. Ashcroft, 366 F.3d 790, 797 (9th Cir. 2004) (noting Zadvydas rejected

---

[2] Respondent states only, without explaining how the Notice of Removal would impact any potential removal to Mexico, "Petitioner's detention is reasonable given the significant likelihood of removal in the foreseeable future. See attached Notice of Removal." ECF No. 10 at 2.

[3] To the extent Respondent suggests Petitioner's refusal to cooperate with his removal to Mexico warrants indefinite detention, the undersigned joins the numerous other judges in this district who have rejected this argument. See Obando Vargas v. Blanche, et al., No. 1:26-CV-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) ("Respondents' argument appears to be that, because petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous[.]"); Garcia v. Warden, Cent. Valley Annex, No. 1:26-CV-04659-DJC-JDP, 2026 WL 2254380, at *3 (E.D. Cal. Aug. 4, 2026) ("[T]he Government cannot use indefinite detention to manufacture noncitizens' consent to removal to Mexico under the standing agreement. To adopt the Government's position on the use of detention to strong-arm third-country removals would not only undermine the consent required in those removals but also sanction the use of detention to coerce otherwise unavailable deportations.").

government's argument that § 1231(a)(6) authorized a noncitizen's "potentially indefinite detention, even if such detention were premised on 'protecting the community from dangerous [noncitizens]'"). Petitioner's current detention is purely preventive. For instance, the February 25, 2026, Notice of Revocation of Release identifies Petitioner's alleged OSUP violation as being "[c]onvicted of a crime of moral turpitude." ECF No. 11-1 at 2. But Petitioner's FBI rap sheet does not reflect any convictions since his release on OSUP in June 2016. See ECF No. 10-7. ICE appears to have re-detained him based on the same conviction that was the impetus for the IJ's April 2014 removal order, and without any change in circumstances regarding the reasonable foreseeability of his removal to Cuba.

In Zadvydas, the Supreme Court expressly limited this type of preventive detention to "specially dangerous individuals and subject to strong procedural protections," and required the presence of "some other special circumstance, such as mental illness, that helps to create the danger." 533 U.S. at 690-91. Petitioner's conviction history, while no doubt encompassing serious offenses, reflects an "ordinary violent criminal" who falls outside of the Zadvydas exception. Tuan Thai, 366 F.3d at 797; see also Yakoub v. Marin, No. 5:26-CV-01399-JAK (RAOX), 2026 WL 922015, at *6 (C.D. Cal. Mar. 31, 2026) (holding, in factually similar case, that "under Zadvydas, Petitioner's criminal history and the corresponding potential danger he presents to the community cannot justify his prolonged detention").

For all these reasons, the undersigned finds that Respondent has not established the significant likelihood of Petitioner's removal to Cuba or otherwise justified his continued post-removal detention. Accordingly, the undersigned recommends that the petition be granted on his Zadvydas claim (Count Three).

**B. Petitioner's Re-Detention Violated Revocation Procedures**

The undersigned finds that Petitioner is alternatively entitled to relief on his claim that the revocation of his OSUP violated ICE regulations, see 8 C.F.R. §§ 241.4(*l*) and 241.13(i) (Count One).[4] Courts have found these regulations to be enforceable in habeas actions. See Nguyen v.

[4] The Notice of Revocation of Release cites 8 C.F.R. § 241.4(*l*) as the revocation authority. The undersigned finds the more applicable regulation is 8 C.F.R. § 241.13(i). "Where a noncitizen

Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) ("As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid.") (quotations and citation omitted); Nguyen v. Charles, No. 1:25-CV-01592-TLN-CSK, 2025 WL 3492117, at *2 (E.D. Cal. Dec. 4, 2025) (noting that 8 C.F.R. §§ 241.4(*l*) and 241.13(i) "protect important due process rights owed to non-citizens").

This case concerns an alleged violation of an OSUP condition, which is governed by 8 U.S.C. § 241.13(i)(1): "Any [noncitizen] who has been released under an [OSUP] . . . who violates any of the conditions of release may be returned to custody[.]" See also 8 C.F.R. § 241.4(l) (similarly permitting revocation for violation of conditions of release). As explained above, the February 2026 Notice of Revocation of Release does not cite a specific OSUP condition that Petitioner violated. It instead states that he was "convicted of a crime involving moral turpitude," which appears to be a reference to one of Petitioner's convictions that predated his release on OSUP entirely. Respondent points to Petitioner's 2018 arrest as "changed circumstances" warranting revocation, ECF No. 10 at 3, but there is no evidence in the record that this stale arrest was the impetus for ICE's revocation of release.

Even if Petitioner's 2018 arrest could provide the basis for Petitioner's re-detention, there is no indication that Respondent followed the necessary "revocation procedures," namely the requirement that DHS "conduct an initial informal interview promptly" after de-detention to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." Id. § 241.13(i)(3); 8 C.F.R. § 241.4(*l*) (same). Both the initial interview form attached to Petitioner's Notice of Revocation of Release and the separate "Notice of Informal Interview" field on the Notice of Revocation of Release are blank. ECF No. 11-1 at 1, 3. Courts have found that the government's failure to provide the initial informal interview renders re-detention unlawful. See, e.g., Phan v. Beccerra, No. 2:25-CV-01757-DC-JDP, 2025 WL 1993735

---

subject to a final order of removal is out of custody, revocation of their release is governed by 8 C.F.R. § 241.13(i)." Bagat v. Andrews, No. 1:26-CV-00346-DJC-AC, 2026 WL 252240, at *1 (E.D. Cal. Jan. 30, 2026)). Nevertheless, the undersigned will consider them both given the similarities between their respective "violation of conditions of release" provisions.

(E.D. Cal. July 16, 2025) (finding that the petitioner was likely to succeed on merits of due process claim "[b]ecause there is no indication that an informal interview was provided," and collecting cases). Respondent acknowledges that there is "no significant distinction" between the instant case and the cases Magistrate Judge Guy Castillo cited in her Order to Show Cause on this point. ECF No. 10 at 3; see Nguyen v. Warden of Golden State McFarland Det. Facility, No. 2:25-CV-03297-SKO (HC), 2026 WL 72110, at *3 (E.D. Cal. Jan. 9, 2026) (holding that provision of initial informal interview two months after re-detention violated the petitioner's due process rights).

Based on these violations of the regulatory revocation procedures, the undersigned finds that the revocation of Petitioner's OSUP failed to comport with due process. Accordingly, Petitioner is also entitled to relief on Count One of his petition.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for writ of habeas corpus be GRANTED on Counts One and Three.[5]

2. Respondent be ordered to immediately release Petitioner Yosbel Abin-Diaz (A# 097-778-271) under conditions of supervision dictated by applicable statutes and regulations.

3. The Clerk of the Court be directed to serve the Central Valley Annex with a copy of any final order granting release.

4. Respondent be enjoined from re-detaining Petitioner unless and until they comply with all procedures set forth in 8 C.F.R. § 241.13(i) and any other applicable statutes and regulations.

5. Judgment be entered in Petitioner's favor and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with

[5] In the interests of judicial economy, the petition's remaining claim is not addressed herein.

the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 9, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE